**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACOB BARTON,

Petitioner,

v.

BO ZHANG, HARVES BRIDGE LLC, BEIJING
SHENGPURUISI INTERNATIONAL SPORTS CO.,
LTD.,

Respondents.

**Case No. 23-cv-8536**

**PETITION FOR AN ORDER
CONFIRMING ARBITRATION AWARD**

Petitioner Jacob Barton moves to confirm the September 19, 2023 Final Arbitration Award (Ex. A) issued in an arbitration between the parties in the amount of $5,679,845.91.

## INTRODUCTION

1. This case relates to approximately $4.5 million in payments that Respondents Bo Zhang (a Chinese national), Beijing Shengpuruisi International Sports Co., Ltd. ("Beijing Shengpuruisi") (a Chinese company), and Harves Bridge LLC ("Harves Bridge") (a Delaware company) owe to Petitioner. Mr. Zhang, now in his thirties, is the son of Chinese billionaires who control a vast real estate empire in and around Beijing through a web of entities known as Harves.

2. In around 2019, Mr. Zhang had an idea to develop interactive sports-themed video games, and to market those video games in China and then worldwide. To that end, Mr. Zhang— through companies he controlled—entered into a series of contracts with Petitioner to design and build sports-themed gaming centers in China related to the Manchester United Football Club and the National Basketball Association. This allowed Mr. Zhang, whose professional experience prior to joining the family business was limited to a brief stint at Oppenheimer Holdings (the wealth

management company that happened to manage his family's fortune), to stand shoulder to shoulder with titans in the sports industry.

3. For example, when the Zhang-controlled Harves entities announced the partnership with Manchester United, Mr. Zhang was prominently featured standing next to Denis Law (one of the most storied players in franchise history, known as "The King" and "The Lawman" to Manchester United supporters) and Richard Arnold (the Managing Director of Manchester United).

 

4. Backed with his family's money, Mr. Zhang hired the best in the business: Petitioner Jacob Barton. Mr. Barton is the Principal and Founder of Local Projects LLC, a media and design firm that has received international acclaim for developing innovative, novel concepts combining uses of space and technology. Mr. Barton's credits include the 9/11 Memorial Museum in New York, the London Mithraeum, the Planet Word Museum in Washington DC, and Greenwood Rising Black Wall Street History Center in Tulsa.

5.       After incurring millions of dollars of contractually-owed fees to Mr. Barton—and as Mr. Zhang strung Mr. Barton along with promises of payment—it became clear that payment would never come. Mr. Barton thus initiated an Arbitration to collect what was owed to him. The parties agreed that the dispute would be decided by a three-arbitrator Panel consisting of the Hon. Shira A. Scheindlin (Ret.) serving as Chair, Howard Tescher, Esq., and Theodore Folkman, Esq.

6.       After months of obstructive conduct—including repeated stall tactics that the Panel described as "bad faith"—and following a series of adverse decisions reflecting an ever-decreasing likelihood of success, Respondents' counsel withdrew from the case. Mr. Zhang then personally emailed the AAA seeking an extension of deadlines in the case as he was looking for new counsel. The Panel denied that request and ordered that the Evidentiary Hearing proceed on August 7, as previously scheduled.

7.       During the August 7 Evidentiary Hearing, Mr. Barton presented evidence on his entitlement to payment, as well as evidence showing that Mr. Zhang was the alter ego of Beijing Shengpuruisi and Harves Bridge. Respondents declined to participate in the hearing.

8.       On September 19, 2023 the Panel issued an award in Petitioner's favor—jointly and severally against all Respondents—in the amount of $5,679,845.91, inclusive of damages, expenses and attorneys' fees, and pre-award interest.

**JURISDICTION AND VENUE**

9.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203, which provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 204, which provides that "[a]n action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title maybe brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could have been brought[.]"

## THE PARTIES

11.     Petitioner Jacob Barton is a natural person residing in New York, New York.[1]

12.     Respondent Beijing Shengpuruisi is a company organized under the laws of China based in Beijing, China.

13.     Respondent Harves Bridge is a Limited Liability Company organized under the laws of Delaware with its principal place of business in Washington, DC.

14.     Respondent Bo Zhang is a citizen of China. His LinkedIn profile states that he is the "Chairman/CEO at Harves" and is based in Washington DC, although during the arbitration his attorneys represented that he lived in China. Mr. Zhang also served as Chairman of Beijing Shengpuruisi and Chairman of Harves Bridge.

---

[1] Mr. Barton is the only Petitioner in this proceeding. Although the Arbitral Award was also issued in favor of Local Projects, Local Projects has assigned to Mr. Barton any and all proceeds related to this matter.

15. The business address for "Harves" listed on Mr. Zhang's LinkedIn profile is 2550 M Street, NW, 2nd Floor.[2] During the arbitral proceedings, Mr. Zhang's counsel represented that Mr. Zhang moved back to China.

# Bo Zhang
Chairman/CEO at Harves
Washington, District of Columbia, United States

## Summary
Since assuming a leadership role in the family business, Bo Zhang has been expanding the Harves portfolio with a particular focus on the next generation. Earlier in his career, he served on a wealth management team at Oppenheimer Holdings, Inc.

_____

## Experience

Harves
Chairman/CEO
February 2014 - Present (9 years 8 months)
2550 M Street, NW, 2nd Floor, Washington D.C. 20037

Since assuming a leadership role in the family business, Bo Zhang has been expanding the Harves portfolio with a particular focus on the next generation. Earlier in his career, he served on a wealth management team at Oppenheimer Holdings, Inc.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Dispute Related to DreamCube Innovations

16. In 2019, Mr. Zhang—the son of a Chinese real estate mogul, and whose family runs what is known as the "Harves Group" in China—had an idea to develop interactive sports gaming experiences for the Chinese market. Mr. Zhang's vision was to license branding from iconic sports brands like the Manchester United Football Club (and, later, the National Basketball Association) and charge admission to play in-person, live-action, immersive sports video gaming experiences in China and beyond. This idea is what was developed into what is now known as the DreamCube. To that end, Mr. Zhang formed a series of companies in the United States and abroad under the

---

[2] https://www.linkedin.com/in/bo-zhang-8b7307a2/

Harves umbrella—including the China based Beijing Shengpuruisi International Sports Co., Ltd. (a Respondent in this proceeding), the Hong Kong-based Harves Entertainment Ltd., and two Delaware companies: Harves Bridge LLC (another Respondent in this Proceeding) and Harves Global Entertainment LLC.

17. Mr. Zhang is a multimillionaire in his own right and is the scion of a real estate family worth billions. He showed up prepared to invest heavily in the idea, and retained Local Projects LLC and its co-founder, Petitioner Jacob Barton, to execute it. On October 20, 2020, Mr. Zhang (through companies he controlled) entered into a series of contracts with Local Projects and Mr. Barton, each of which contained arbitration clauses.

18. The design and development work to execute on Mr. Zhang's vision was proceeding throughout the COVID pandemic. Mr. Zhang insisted that the work go forward in the face of the health crisis, and Mr. Barton obliged. With Mr. Zhang's approval, Local Projects and Mr. Barton designed two soccer games ("Game 1" and "Game 2"), and began work on a basketball game. But after about a year, Mr. Zhang (despite representing that he had secured financing for the joint venture) pleaded poverty and changed circumstances on behalf of the entities he controlled. He refused to pay for approximately $4.5 million in authorized and approved work, and this Arbitration followed.

19. In November 2019, the Harves-run "Theatre of Dreams" Manchester United-branded gaming experience opened to great fanfare in Beijing, where multiple Manchester United stars attended the inaugural ceremonies. Mr. Zhang was featured prominently in the promotional photographs.



20.	As of at least August 2022, the Theatre of Dreams has been operational in a massive retail space near Tiananmen Square in Beijing, where customers pay to play the Petitioner-designed and -developed "Game 1." Per an August 12, 2022 interview with Manchester United Chief Commercial Development Officer James Holroyd:

> The 'Theatre of Dreams' in Beijing is a groundbreaking concept in football, and we are incredibly proud of its achievements and our partner Harves. The centre works on many levels; for tourists visiting Beijing, for club partners looking to activate in such an important market, for local football development initiatives with the Beijing sports bureau, but most importantly it offers our huge fanbase in Beijing a physical home.

> We fully opened the centre just before the pandemic, and consequently the traffic and business has been limited by the trading restrictions which have been in place. Despite the challenging backdrop, we remain confident in the business. Interest in the centre remains high, driven by excellent reviews and it has even won awards for offering some of the best food in Beijing! Despite the covid challenges, we have continued to upgrade the fan experience at the centre, and we have recently launched a new game over the summer. The Game Bay technology is a key feature of the experience, offering a new form of entertainment for all visitors, regardless of whether they are football fans, and I'd encourage anyone in Beijing to experience the immersive technology first

hand![3]

21.     Despite the successes of the Theatre of Dreams, Respondents have not paid Local Projects and Mr. Barton for the work they did.

**B. Mr. Zhang's Motion to Dismiss on Jurisdictional Grounds**

22.     From the outset of the arbitral proceedings, Mr. Zhang objected to the jurisdiction of the AAA on the theory that he never agreed to arbitrate this dispute in his personal capacity and is not a signatory to the relevant contracts in his personal capacity. Therefore, Mr. Zhang argued, the AAA lacked jurisdiction over any claims brought against Mr. Zhang. Instead of attempting to enjoin the arbitration in federal court, Mr. Zhang instead asked the Panel to determine the question of arbitrability in a motion to dismiss filed on February 27, 2023. The Panel denied that motion on June 20, 2023, holding that the claims were arbitrable as to Mr. Zhang under a veil piercing and alter ego theory.

**C. Respondents' Serial, Willful, and Bad Faith Discovery Misconduct**

23.     Throughout the arbitration, Respondents were repeatedly admonished by the Panel for obstructing the discovery process. For example, in response to Petitioner's discovery request for documents and communications related to, among other things, (1) the ownership and capitalization of the various entities controlled by Mr. Zhang, (2) payments made to Petitioner and Local Projects, (3) representations made by Mr. Zhang that he was raising capital to fund DreamCube Innovations, and (4) the continued use of the gaming bays designed and developed by Petitioner and Local Projects, Respondents produced a mere six pages of heavily redacted discovery.

---

[3] Denis Green, "China Sports Business Weekly 12th August," Aug. 12, 2022 (available at: https://www.mailmangroup.com/post/china-sports-business-weekly-12th-august).

24.     On March 17, 2023, following a motion to compel, the Panel ordered Respondents to produce documents responsive to Petitioner's discovery requests. Thereafter, Respondents refused to meet and confer on the scope of discovery, and the Panel again was forced to intervene again when it ordered Respondents to provide a list of custodians and ESI sources by April 11.

25.     On April 11, with just nine minutes before the Panel-ordered deadline, Respondents asserted (for the first time, and nearly six months into the proceedings) that Chinese law prohibited all Respondents (even the US-based Harves Bridge) from participating in discovery. In support of this assertion, Respondents submitted a two-page letter memorandum purporting to come from an attorney in China stating that certain of Mr. Zhang's unnamed co-investors would object to the production of evidence in this case. The letter offered no opinion on whether Chinese law even applied to the discovery at issue.

26.     On May 1, the Panel overruled Respondents' April 11 blocking statute objection. The Panel noted that Respondents offered no proof as to the applicability of Chinese privacy laws to the case and also that Respondents failed to show any conflict between Chinese law and American law. Furthermore, the Panel held that even if Respondents had made such a showing, they would not be able to show that principles of international comity would favor Respondents. Among other things, the Panel noted that "Respondents have not acted in good faith" because they waited for more than three months (and until the minutes before a discovery deadline) to file their blocking statute objection. The Panel noted that this "late objection" did not result in a waiver, but "does show bad faith." The Panel ordered Respondents to produce discovery by May 15. The Panel concluded that "[s]hould Respondents fail to comply, Claimants may seek any remedy they deem appropriate."

27.     Respondents missed the May 15 production deadline and, on May 23, Respondents' counsel withdrew from the case. On June 9, Mr. Zhang personally emailed the AAA case administrator seeking an extension of the case schedule as he was trying to locate new counsel. The Panel denied that request. Mr. Zhang thereafter stopped responding to communications from the AAA, even though he was copied on all correspondence.

**D. The Evidentiary Hearing and Arbitral Award**

28.     On August 7, the Panel took evidence at the Evidentiary Hearing. Mr. Barton was the only witness who testified. Mr. Barton's testimony established that Mr. Zhang was the alter ego of Beijing Shengpuruisi and Harves Bridge, and that the two entities and Mr. Zhang (as the alter ego of the entities) were jointly and severally liable to Mr. Barton and Local Projects for $4,418,800.00, plus attorneys' fees, costs of suit, and pre- and post-award interest.

29.     The Panel issued a final award on September 19, 2023. (Ex. A.) The award held that all three Respondents—Mr. Zhang, Beijing Shengpuruisi, and Harves Bridge—were liable for $4,418,800.00, plus interest at the 9% statutory New York rate running as of May 18, 2021 (the date of the breach), plus costs, expenses, and attorneys' fees in the amount of $330,543.53. The total amount awarded by the Panel was $5,679,845.91.

**PRAYER FOR RELIEF**
**(CONFIRMATION OF ARBITRATION AWARD)**

30.     Petitioner repeats and realleges each and every allegation contained in the above paragraphs, inclusive, and incorporates them hereby by reference.

31.     Pursuant to 9 U.S.C. § 207, this Petition is timely, as it has been filed within three years of the delivery of the Arbitration Award to Petitioner.

32.     The Arbitration Award has not been vacated, modified, or corrected by order of any court of competent jurisdiction and is still in full force and effect.

33.     Pursuant to 9 U.S.C. § 207, Petitioner is entitled to a judgment confirming the Arbitration Award dated September 19, 2023, in the amount of $5,679,845.91, jointly and severally against Respondents Bo Zhang, Beijing Shengpuruisi, and Harves Bridge.

**WHEREFORE**, Petitioner respectfully requests that this Court enter an Order confirming the Arbitration Award dated September 19, 2023.

Dated:  New York, New York
         September 28, 2023

Respectfully submitted,
**BATHAEE DUNNE LLP**

By:     _____
Andrew Chan Wolinsky, Esq.
Yavar Bathaee, Esq.
Bathaee Dunne LLP
445 Park Avenue, 9th Floor
New York, NY 10022
Phone: (332) 208-7337