AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES

```
--------------------------------------------------------------------------X
In the Matter of the Arbitration Among:             :
                                                    :
                                                    :
                                                    :
JACOB BARTON, LOCAL PROJECTS LLC,                   :
Nominally DREAMCUBE INNOVATIONS, LLC                :   Case No. 01-22-0003-2317
        Represented by Andrew Wolinsky of Bathaee Dunne LLP  :   ARBITRATION TRIBUNAL
                                      Claimants,    :   HON. SHIRA A. SCHEINDLIN
                                                    :   THEODORE FOLKMAN
                                                    :   HON. HOWARD A. TESCHER
          -   Against -                             :      FINAL AWARD
                                                    :
                                                    :
BO ZHANG, HARVES BRIDGE LLC, BEIJING                :
SHENGPUUISI INTERNATIONAL SPORTS CO.,               :
LTD.,                                               :
        Ex Parte                                    :
                                      Respondents.  :
                                                    :
--------------------------------------------------------------------------X
```

We, THE UNDERSIGNED ARBITRATORS, having been duly designated in accordance with the Limited Liability Company Agreement of DreamCube Innovations, LLC ("DreamCube Agreement") dated October 20, 2020, and having been duly sworn, and having duly heard the proofs, allegations, and arguments at an evidentiary hearing held on August 7, 2023, do hereby issue this FINAL AWARD.

## I.    The Parties

Jacob Barton ("Barton") is Principal and Founder of Local Projects LLC, a media and design firm that develops innovative concepts combining uses of space and technology.  Barton is an American citizen residing in New York, New York.

Local Projects LLC ("Local Projects") is a limited liability company organized under the laws of New York, with its principal place of business in New

York City.  *See* Statement of Claim ¶ 10.[1]  Barton has done many design work projects for Local Projects, including The 9/11 Memorial Museum, the Cooper Hewitt Smithsonian Design Museum, the Legacy Museum in Montgomery, Alabama, the Greenwood Rising in Tulsa, Oklahoma, the London Mithraeum, and the Planet Word in Washington, DC.  *See id.* ¶¶ 21, 23.  Respondents Harves Bridge LLC ("Harves Bridge") and Beijing Shengpuruisi International Sports Co., Ltd. ("Shengpuruisi") ("Answering Respondents") pled that they lacked sufficient knowledge to admit or deny these allegations.

DreamCube is organized under the laws of Delaware and has its principal place of business in Washington, DC.  *See id.* ¶ 11.  Answering Respondents admitted paragraph 11 in their Answer.

Bo Zhang is a Chinese citizen.  As of the date this Claim was filed, his LinkedIn profile stated that he was the "Chairman/CEO at Harves" and was based in Washington DC.  The Harves business address listed on Zhang's LinkedIn profile is 2550 M Street, NW, 2nd Floor, Washington DC 20037.  Zhang is listed as a "natural person" Board member of DreamCube.  Zhang was also Chairman of DreamCube.  *See id.* ¶¶ 12-13.  Answering Respondents denied the allegations of

---

[1] In their Statement of Answer at ¶ 10 ("Answer"), Respondents Harves Bridge and Shengpuruisi, plead that they lack sufficient knowledge to admit or deny this allegation. Respondent Zhang did not file an Answer to the Statement of Claim but did file a motion to dismiss the Claim based on the argument that the Panel could not exercise jurisdiction over him as he had not signed any arbitration agreement in his individual capacity.

01-22-0003-2317                                                                                      2

paragraph 12 but stated that the Linked in page referred to in paragraph 13 "speaks for itself."

Harves Bridge is a limited liability company organized under the laws of Delaware with its principal place of business in Washington, DC. *See id.* ¶ 14. Answering Respondents admitted this allegation.

Shengpuruisi is a company organized under the laws of China, with a registered address in Beijing, China. *See id.* ¶ 15. Answering Respondents admitted this allegation.

## II.    Overview of the Dispute

Pursuant to a joint venture between Local Project and Barton on the one hand, and Harves Bridge, on the other, resulting in the formation of DreamCube, Barton and Local Projects agreed to design and build sports-themed gaming centers in China. This agreement is dated October 20, 2020 and is annexed as Ex. 1 to Claimants' Motion for Summary Adjudication and Opposition to Mr. Zhang's Motion to Dismiss ("Cl. Motion"). The DreamCube Agreement is governed by Delaware law.[2] *See id.* at Section 13.12. It also contains the arbitration clause

---

[2] The parties agreed, at the first prehearing conference, that New York law governs all substantive issues in this arbitration. *See* Pre-Hearing Order #1 at ¶ 10, Ex. 4 to Cl. Motion.

governing these proceedings and requires the application of the AAA Commercial

Arbitration Rules. *See id.* at Section 13.13.[3]

Zhang, an officer of Harves, retained Barton and Local Projects to begin

work on designing and building interactive sports gaming centers for the Chinese

market. After spending a good deal of time and money on the project, Zhang and

the companies that he controlled failed to make the payments they contracted to

pay. Claimants allege that they are owed approximately $4.5 million together with

pre judgment interest, costs, and attorneys' fees.

### III.   Procedural History

On June 23, 2022, Claimants filed an arbitration demand against all

Respondents seeking $4.5 million in damages for breach of contract and breach of

fiduciary duty. On December 14, 2022, Claimants filed a 41-page Statement of

Claim setting forth their complaint. The Answering Respondents filed their

answer on January 27, 2023. After the Panel issued a scheduling order, both

Claimants and Respondents served document requests. On February 23, 2023,

---

[3] As discussed later in this Award, the DreamCube Agreement also contains a Limitation of Liability Clause that states that the "Agreement is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligation of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. *See* Ex. 1 to Cl. Motion at Section 10.02(a).

01-22-0003-2317                                                                                          4

Claimants moved to compel responses to those requests from Respondents.  Five days later, on February 28, 2023, Respondent Zhang moved to dismiss the claim, asserting that the claims against him were not arbitrable, as he was not a signatory, in his individual capacity, to either of the agreements containing an arbitration clause.[4]  On March 17, 2023, the Panel heard oral argument on Claimants' motion to compel.

On March 20, 2023, the Panel issued Pre-Hearing Order #3, which required Respondents to produce most of the documents requested by Claimants.  But on April 11, 2023, Respondents notified the panel for the first time that they would not comply with the Panel's order on the grounds that compliance would violate the laws of the Peoples' Republic of China.  The parties then briefed that issue, and on May 1, 2023, the Panel issued Pre-Hearing Order #4, overruling Respondents' objection to producing documents and again ordering Respondents to produce documents.

On May 17, 2023, Claimants filed their opposition to Zhang's motion to dismiss and also moved for summary adjudication of the dispute.  On May 23,

---

[4] In addition to the DreamCube Agreement, on October 20, 2020, Dreamcube and Shengpuruisi entered into an "Inaugural Gaming Bay Supply and License Agreement ('License Agreement')". On the signature page of the License Agreement, Zhang is identified as the Chairman of Shengpuruisi and appears to have executed the agreement on behalf of the company. *See* Ex. 2 to Cl. Motion.  The License Agreement also contains an arbitration clause  providing that "[t]he arbitrator shall include in its award its allocation among the Parties of the costs, fees, and expenses related to the arbitration."

01-22-0003-2317                                                                                         5

2023, Respondents' counsel sought leave to withdraw as counsel, which was granted. On June 20, 2023, the Panel issued Pre-Hearing Order #5, finding that the claims against Zhang were arbitrable on the grounds of alter ego and veil piercing, supported by evidence offered by Claimants in support of their opposition to the motion to dismiss. However, the Panel denied the motion for summary adjudication, finding that an evidentiary hearing was required at which Zhang could contest the Panel's finding that he was the alter ego of the Respondent companies.[5] Despite several extension of time to oppose the motion for summary adjudication and to reply to Claimants' opposition to the motion to dismiss, Respondents did not submit any response. No new counsel appeared on behalf of Respondents. In short, Respondent simply stopped responding to the Panel or to the AAA case manager.[6]

An evidentiary hearing was held on August 7, 2023. Barton was the only witness called by Claimants. A transcript of the hearing was prepared and sent to

---

[5] Claimants asked for summary adjudication based on Respondents' failure to oppose the motion and as a sanction for Respondents' failure to produce documents despite two orders from the Panel compelling production. Nonetheless, the Panel denied the motion finding that an evidentiary hearing was required and that summary adjudication would be tantamount to a default judgment, which is not permitted.

[6] *See, e.g.,* 6/9/23 email from AAA Case Manager Matthew Conger to Panel, indicating that Zhang had not retained new counsel despite stating earlier to the AAA Case Manager that he was in the process of doing so, and thereafter apparently stopped responding to any communications from the AAA (although consistently copied on all subsequent e-mails).

01-22-0003-2317    6

the parties and the Panel on August 25, 2023.  The hearing was closed on the date

the transcript was received.

## IV.    Background Facts

Barton testified to the following facts.  *See generally* Transcript of Hearing

("Tr.") at pp. 10-155.  In 2019, Zhang had the idea of developing a novel,

interactive sports gaming experience for the Chinese market.  The concept was to

license branding from internationally known sports entities such as the Manchester

United Football Club and the National Basketball Association and then to market

live-action, immersive sports video-gaming experiences to consumers across

China.  At the hearing, the Panel was shown a video of the Beijing sports center

and was able to view people interacting with the displays.  *See* Tr. at 14, and Ex. 4

to Cl. Motion.

When Zhang first developed the concept, he contacted Barton and sent him a

request for proposal.  Barton submitted a proposal for design of the DreamCube

project at a cost of $4.5 million.  After many discussions, the parties agreed that

rather than enter into a straightforward purchase contract, they would form a joint

venture in which Barton, Harves Bridge, and Shengpuruisi would be members.[7]

---

[7] However, despite that testimony, the only members of DreamCube are Harves Bridge, Barton
and Local Projects.

01-22-0003-2317                                                                                          7

Barton would receive quarterly payments until he and Local Projects received the full $4.5 million.  *See generally* Tr. at pp. 24-28; 38-39.

In order to implement this plan, Zhang formed a number of companies which all appeared to be funded by the Harves Group, a group of companies controlled by Zhang's family.  Harves Bridge LLC signed the DreamCube Agreement, together with DreamCube and Local Projects.  *See* Ex. 1 to Cl. Motion.[8] Zhang served on DreamCube's Board and was able to vote Harves Bridge's 75% share of the company.  DreamCube then entered into the Licensing Agreement with Shengpuruisi.  *See* Ex. 2 to Cl. Motion.

In addition to these two agreements, Shenyang Harves Century Investment & Development Co. Ltd, ("Shenyang"), a real estate company controlled by Zhang's family, executed a Guaranty Agreement on October 20, 2020, providing that Shenyang, identified as an "affiliate" of Harves Bridge  "unconditionally and irrevocably guarantees to the  Beneficiary [Barton and Local  Projects] the payment when due of all amounts payable to the Beneficiary in connection with an exercise of the Put Right."  *See* Ex. 3 to Cl. Motion.  The Put Right allowed Barton/Local Projects to force Harves Bridge to buy back their equity in DreamCube "at a purchase price equal to the greater of (i) the Fair Market Value of

---

[8] At the hearing, Claimants' counsel used the exhibits annexed to their motion for summary adjudication as the Hearing Exhibits maintaining the same numbers at the hearing.  Thus, Ex. 1 to Claimants' Motion is also Hearing Exhibit 1.

01-22-0003-2317                                                                    8

such units or (ii)" any funds still owed to them.  *See* Ex. 1 to Cl. Motion at Section

9.05.  Zhang signed the Guaranty Agreement on behalf of Shenyang as its

President.  *See* Ex. 3 to Cl. Motion at p. 6.  His contact information was listed as

Bo.Zhang@harves.com.  *See id.*

On January 23, 2020, Local Projects entered into a Project Service

Agreement with Shengpuruisi, which stated that Harves Entertainment, Ltd, an

affiliate of Shengpuruisi, had entered into an agreement with Manchester United to

use the brand for the indoor sport-themed entertainment centers.  Shengpuruisi

contracted with Local Projects to develop and design prototype game bays for the

entertainment centers.  This contract contemplated a $731,500 fee to Local Projects

for the work to design the prototype.  Zhang signed the Project Services

Agreement as Chairman of Shengpuruisi.  *See* Statement of Claim ¶¶ 35-36 (citing

exhibits).

Barton and Local Projects completed nearly all the work contemplated by

the DreamCube Agreement but were paid only $509,728.54 for their work.  The

remaining $4,465,970.46 was never paid.  *See* Statement of Claim ¶ 5.  This

assertion was denied by Answering  Respondents.  *See also* Tr. at 40.  At the

hearing Barton testified that had the project been completed he would have been

owed $6.12 million.  *See id.* at 77.  But he and Local Projects are only seeking to

01-22-0003-2317                                                                                          9

recover for the work that was actually completed.  The evidence introduced at the

hearing show that amount to be $4,418,800.  *See id.* at p. 85 and Hearing Ex. 43.

## V.    The Claims and the Issues to be Resolved

### A.  <u>Claims</u>:

Claimants brought eight different claims for relief.  *See* Statement of Claim

at ¶¶ 107-163.  We summarize those claims as follows:

- Count I – Breach of the Licensing Agreement between Shengpuruisi

  (Licensee) and DreamCube (Licensor), which promised that Shengpuruisi

  would pay DreamCube in eight quarterly installments for the work it

  performed, with the first payment due 45 days from the execution of the

  License Agreement (Oct. 20, 2020).  Shengpuruisi only made the initial

  payment.  Accordingly, Claimants seek the remaining balance of the work

  they performed in accordance with the DreamCube Agreement.  On the

  same date, the guaranty agreement, described above, promised that

  Shenyang (Guarantor) would pay the obligations of Harves Bridge to Barton

  and Local Projects under the DreamCube Agreement if Harves Bridge failed

  to do so.    *See* Ex. 3 to Cl. Motion.  Claimants seek $4,465,970.46 as

  damages on this claim.[9]

---

[9] At footnote 6 of Claimants' Motion for Summary Adjudication, Claimants acknowledge that the "[t]he amount due to Claimants discussed in the May 2022 correspondence with Mr. Zhang is

- Count II – Breach of Contract derivatively on behalf of DreamCube.  Barton and Local Projects are minority shareholders of DreamCube and seek recovery from Shengpuruisi on behalf of DreamCube for breach of the License Agreement. Claimants made a demand on Shengpuruisi prior to bringing this claim but received no response.  They now seek $4,465,970.46 as damages on this claim.[10]

- Count III:  Breach of Contract as beneficiaries of the License Agreement against Zhang as the alter ego of Shengpuruisi.  This claim is identical to Count I, except that it seeks damages directly against Zhang on an alter ego theory.

- Count IV:  Breach of Contract derivatively on behalf of DreamCube.  This claim is identical to Count II, except that it seeks damages directly against Zhang as the alter ego of Shengpuruisi.

- Count V:  Breach of fiduciary duty against Zhang.  Claimants allege that Zhang owed fiduciary duties to DreamCube and to its members. DreamCube performed $4,465,970.46 of work which should have been paid to Barton and Local Projects but was never paid.[11]

---

slightly lower than the  $4,465,970.46 set forth in the Statement of Claim.  The amount set forth in the Statement of Claim was calculated incorrectly."

[10] See footnote 9  for the correct amount of damages now sought by Claimants.
[11] See preceding footnotes correcting amount of damages now sought by Claimants.

01-22-0003-2317                                                                                                          11

- Count VI:  Breach of fiduciary duty against Harves Bridge.  This is the same as Claim V, except that it is brought against Harves Bridge, one of the three signatories to the DreamCube Agreement (along with DreamCube and Local Projects).

- Count VII:  Breach of fiduciary duty against Shengpuruisi as Zhang's alter ego.  This is the same as Claim V, except that it is brought against Shengpuruisi.

- Count VIII.  Breach of fiduciary duty against Harves Bridge as Zhang's alter ego. This is the same as Claim V, except that it is brought against Harves Bridge.

**B.  Issues**

There are a number of issues that the Panel must address.  They are set forth immediately below.

1. Have Claimants established their claim for breach of contract as beneficiaries of the Licensing Agreement between Shengpuruisi and DreamCube in the amount of $4,418,800.00?

2. Have Claimants established their claim for breach of contract brought derivatively as minority shareholders of DreamCube against Shengpuruisi for breach of the License Agreement?

3. Have Claimants established that Zhang is the alter ego of DreamCube and Shengpuruisi?

4. Can Claimants succeed on their breach of fiduciary duty claims in light of Section 10.02(a) of the DreamCube Agreement?

5. Have Claimants established that Shengpuruisi and Harves Bridge are Zhang's alter egos?

6. If Claimants succeed on any claims, are they entitled to interests, costs, expenses and attorneys' fees?

## VI.    Analysis

The Panel now addresses each of the issues listed above.  We note, however, that we reached our findings and conclusions without the benefit of any input from Respondents, who after initially appearing chose not to continue participating in these proceedings despite many extensions granted at their request and many notices requesting their participation.  For this reason, the Panel does not discuss any evidence or arguments made by Respondents, because there were none.

1. Claimants have established their claim for breach of contract as beneficiaries of the Licensing Agreement between Shengpuruisi and DreamCube in the amount of $4,418,800. However, in conforming the pleadings to the proof, Claimants have established a breach of contract claim against Shengpuruisi as

01-22-0003-2317                                                                                      13

beneficiaries of the DreamCube Agreement as well as the Licensing Agreement as explained below.

Discussion:

In order to prove breach of contract, Claimants must prove the following elements:  (1) existence of a contract; (2) Claimants' performance; (3) Respondents' breach; and (4) damages.

There is no question that Harves Bridge entered into the DreamCube Agreement with Local Projects and Barton.  *See* Ex. 1 to Cl. Motion.  Article VI of that Agreement, titled "Distributions" provides at Section 6.01(a) that "the Company shall see reasonable efforts to distribute net Cash Flow from the Inaugural License Agreement quarterly . . . ."  Section 6.02(b) further provides that "[d]istributions of Cash Flow from Inaugural License Agreement shall be distributed 34.31% to Local Projects and 65.69% to Barton . . . until the Inaugural Unreturned Preference Amount has been reduced to zero . . . ."

There is also no question that Shengpuruisi entered into the License Agreement with DreamCube.  *See* Ex. 2 to Cl. Motion.[12]  Under the terms of the Affiliate Guaranty (*see* Ex. 3 to Cl. Motion) Barton and Local Projects are the beneficiaries of the guaranty, requiring Shenyang to guaranty any payments

---

[12] The Panel infers that this License Agreement is the Inaugural License Agreement referred to in Section 6.02 (b) of the DreamCube Agreement.  It is not a defined term in that Agreement.

01-22-0003-2317                                                                                                          14

due to the beneficiaries under the DreamCube Agreement.  While neither Barton nor Local Projects are named as beneficiaries of the Licensing Agreement between Shengpuruisi and DreamCube, both Barton and Local Projects are parties to that Agreement by virtue of their status as two of the three members of DreamCube, a signatory to that Agreement.  Accordingly, a majority of the Panel concludes that Claimants have proved the existence of a contract between Shengpuruisi and Claimants, on a third-party beneficiary theory.  The first element is satisfied.

Claimants performed under the Licensing Agreement by designing Games 1 and 2, installing Game 1, and performing work related to Zhang's vision for the NBA project.  *See* Ex. 37 to Cl. Motion (approval of Game 1); Ex. 38 to Cl. Motion (installation of Game 1); Ex. 39 to Cl. Motion (approval of Game 2); Ex. 40 to Cl. Motion (example of NBA-related invoice).  The second element is satisfied.

Neither Harves Bridge, Shengpuruisi, nor Zhang paid for the work performed by Barton and Local Projects, other than by making one initial required quarterly payment of $570,953.00.  *See* Ex. 27 to Cl. Motion.  The outstanding balance owed to Claimants is $4,418,800.00.  *See* Ex. 41 to Cl. Motion.  The third and fourth elements are satisfied as Claimants are owed the outstanding balance in return for the work they performed.  Thus, the Panel

01-22-0003-2317                                                                                          15

finds that Shengpuruisi owes the unpaid amount to Claimants.  Thus, a majority of the Panel finds for Claimants on Count I.

2.  Claimants have established their claim for breach of contract brought derivatively as minority shareholders of DreamCube against Shengpuruisi for breach of the License Agreement.

Discussion:

In order to bring a derivative action on behalf of the shareholders of an enterprise, the shareholders must make a demand on the entity to proceed with the proposed claim.  At the hearing, Barton's attorney, Andrew Wolinsky, represented that a written demand was made on DreamCube but no response was ever received.  *See* Tr. at 67-68. Wolinsky represented that the DreamCube Agreement required a pre-suit letter be sent and that a written demand was sent to DreamCube LLC in August, 2022 but no response was ever received.  He also stated that notices to the company were to be sent to Jonathan Pavony of Squire Patton Boggs as directed by Section 13.04 of the Agreement, and the notice was sent to him.  Given that a demand was properly made, the Panel concludes that Claimants have standing to bring a derivative claim and that Shengpuruisi is responsible under the License Agreement for the payment to

01-22-0003-2317

16

DreamCube, and its members Barton and Local Projects, for the unpaid balance in the amount  of $4,418,800.00.[13]

3. A majority of the Panel finds that Claimants have established that Zhang is the alter ego of DreamCube and Shengpuruisi.[14]

Discussion:

The evidence offered at the hearing established that Zhang was the alter ego of Harves Bridge and Shengpuruisi and supported a finding that the corporate veil should be pierced.. The corporate veil will be pierced either "(1) to achieve equity, even absent fraud, where the officers and employees of a parent corporation exercise control over the daily operations of a subsidiary company and act as the true prime movers behind the subsidiary's actions and/or (2) where a parent corporation conducts business through a subsidiary which exists solely to serve the parent." *Matter of Sbarro Holding,* 91 A.D.2d 613, 613 (N.Y. 1982).  To determine whether complete control exists, courts consider a number of factors.  *See Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir. 1997) (listing ten factors to consider including, for example, overlap in ownership, officers, directors and personnel; intermingling of funds;

---

[13] Arbitrator Tescher dissents from this conclusion.

[14] Arbitrator Tescher dissents from this finding.

inadequate capitalization; common office space, address and telephone numbers of corporate entities).

The evidence established that Zhang controlled all of the Harves companies he formed and that all of the entities shared common employees. *See* Ex. 20 to Cl. Motion (organizational chart showing Zhang in charge of all of the companies). He has held the title of Chairman/CEO of Harves since February 2014 (*see* Ex. 21 to Cl. Motion); he is the Chairman of Shengpuruisi (*see* Ex. 2 to Cl. Motion); and he is the President of Shenyang (*see* Ex. 3 to Cl. Motion). The same employees spoke on behalf of all of the companies. *See* Exs. 22 and 23 to Cl. Motion, showing that Huang Li Wei served as Chief Technology Officer of all the Harves entities, using an email address of dr_huanglw@harves.com. Similarly, Francis Person served as CEO of Harves Global Entertainment LLC in the United States but spoke on behalf of other Harves entities in China as well as the United States. *See* Exs. 24 and 25 to Cl. Motion.

Furthermore, Zhang's family business guaranteed certain payments under the DreamCube Agreement. *See* Ex. 3 to Cl. Motion (guaranty agreement). Similarly, the Harves entities were financially interchangeable. In August, 2021, Zhang referred to a commitment from Harves Beijing to continue

operations that contractually belonged to Shengpuruisi.  *See* Ex. 26 to Cl. Motion.

The Harves entities were deliberately undercapitalized. When Shengpuruisi made a required payment in May, 2019, Zhang wrote that those payments came from Harves (*see* Ex. 27 to Cl. Motion).  But in fact, those payments came from Beijin Huarui Tong Zhi Yao Lan Com (*see id.*).  When Zhang was asked to identify the company that made the payment, he failed to respond.

The Harves entities shared addresses.  Harves Bridge occupies the same address as Harves in Washington DC.  That address, 2550 M Street, NW, 2nd Floor, Washington DC 20037, is the address of the Squire Patton Boggs law firm.  *See* Ex. 1 to Cl. Motion (the DreamCube Agreement setting forth the address for notice to a Squire Patton Boggs attorney at that address and Ex. 21 to Cl. Motion (Zhang's LinkedIn profile showing that address).  Finally, Zhang used three different email addresses, all using the term "Harves" (Bo.Zhang@harves.com; Bo.Zhang@harves.com.cn; and Bo.Zhang@harvesgroup.com).  *See* Exs. 29 and 30 to Cl. Motion.

Given the totality of the documentary evidence and the testimony at the hearing regarding Zhang's role, and the absence of any documents or testimony from Respondent Zhang, a majority of the Panel concludes that the proof is sufficient to find that Bo Zhang was the alter ego of DreamCube and

Shengpuruisi, and is therefore personally liable for the damages for which those entities bear responsibility.[15]

4. Claimants cannot succeed on their breach of fiduciary duty claims because the DreamCube Agreement specifically bars claims for breach of fiduciary duty.

Discussion:

Because any claim of fiduciary duty is specifically barred under the terms of Section 10.02(a) of the DreamCube Agreement, the Panel finds that Claimants cannot succeed on their breach of fiduciary duty claims to the extent the Respondents are "Covered Persons" as defined by the DreamCube Agreement. *See Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC,* 2023 Del. Ch. LEXIS 227, at *16 (Del. Ch. Aug. 9, 2023), and in any event, the Claimants have not shown that members of a Delaware LLC, in their capacity as members, owe fiduciary duties to other members.

5. Claimants have established that Shengpuruisi and Harves Bridge are Zhang's alter egos.[16]

Discussion:

---

[15] Arbitrator Tescher dissents from this conclusion.

[16] Arbitrator Tescher dissents from this conclusion.

01-22-0003-2317                                                                                                  20

For the reasons set forth at paragraph 3 above, the Panel concludes that both Shengpuruisi and Harves Bridge are Zhang's alter egos.

6. Claimants are entitled to interests, costs, expenses and attorneys' fees.

Discussion:

The Licensing Agreement between DreamCube and Shengpuruisi contains the following fee-shifting provision: "The arbitrator shall include in its award its allocation among the Parties of the costs, fees and expenses related to the arbitration." *See* Ex. 2 to Cl. Motion at Section 11.2. Thus the Panel has the power to allocate costs, fees, and expenses as it deems appropriate. The Panel concludes that Shengpuruisi should bear the costs, fees and expenses incurred in this arbitration between DreamCube (as nominal Claimant on behalf of Barton and Local Projects) and Shengpuruisi. While there is no fee-shifting provision in the DreamCube Agreement, to which Harves Bridge is a party, all of the costs, fees and expenses of this arbitration, were incurred concurrently by Shengpuruisi and Harves Bridge. In addition, pursuant to AAA Commercial Rule 56, the Panel concludes that all Respondents – to wit Shengpuruisi, Harves Bridge and Zhang are jointly and severally responsible for the costs and expenses incurred.

On August 22, 2023, Mr. Wolinsky, Claimants' counsel, submitted a declaration in support of his application for fees and expenses. Attached to his declaration is an invoice reflecting $344,800 in attorneys' fees and $65,399.28 in

expenses, for a total of $410,199.28.  The Panel notes that this expense figure

includes all of the AAA fees paid by Claimants.  A majority of the Panel finds that

the requested attorneys' fees are not reasonable under the circumstances and

awards only $280,000 in attorneys' fees.[17]  However, the Panel does find that an

award of expenses is reasonable.  The administrative fees and expenses of the

American Arbitration Association totaling $16,175.00 shall be borne $16,175.00

by respondent and the compensation and expenses of the arbitrators totaling

$64,093.75 shall be borne $64,093.75 by respondent. Additional miscellaneous

expenses totaling $1,837.28 shall be borne by respondent. Therefore, a total of

$330,543.53 in fees, costs and expense is awarded to Claimants.

New York's statutory rate for pre-judgment interest is 9%.  *See* New York

Civil Practice Law & Rules § 5004.  Interest should be calculated "from the date of

the [Claimants' demand], which is when the cause of action accrued against the

[Respondents]."  *Bruce Supply Corp. v. D&M Plumbing & Heating Corp.,* 291

A.D. 2d 642, 644 (2d Dep't 2002).  Claimants made multiple demands for

payment.  In a May 18, 2021, Mr. Person, on behalf of DreamCube, acknowledged

that DreamCube was late on payments and promised that Harves would "catch up

with the quarterly payments and get us back on schedule."  Ex. 33 to Cl. Motion.

---

[17] Arbitrator Scheindlin dissents from this conclusion and would find the full requested fee of $344,800 to be reasonable.

01-22-0003-2317                                                                                    22

Thus, the Panel finds that pre-judgment interest should accrue beginning on May 18, 2021.

## VII.  Final Award

1.  A majority of the Panel concludes that Respondents Zhang, Shengpuruisi, and Harves Bridge, jointly and severally, shall pay to Claimants Barton, Local Projects, and nominal Claimant DreamCube, the total sum of $4,418,800.00 as requested in Counts I, II, III and IV of the Statement of Claim.

2.  Counts V, VI, VII and VIII are dismissed for the reasons stated above.

3.  Interest on this award shall run from May 18, 2021, through the date of this award, at the New York statutory rate of 9% simple interest.  Such interest will continue to run until such time as payment is made.

4.  Costs, expenses and attorneys' fees in the total amount of $330,543.53 are also awarded against Respondents in favor of Claimants.

5.   In sum, the total award against Respondents is $4,418,800.00, with interest from 5/18/21-9/19/23 at NY's 9% statutory rate in the amount of $930,511.38, plus expenses and attorneys' fees in the amount of $330,543.53, for a total of $5,679,845.91.

This award is in full settlement of all claims submitted to this arbitration and may be signed in counterparts, collectively forming one composite signed document.

**Dated:**      **September 19, 2023**

01-22-0003-2317                                                                                              23

_Theodore Folkman, Co-arbitrator_

_Hon. Howard A. Tescher, Co-arbitrator_

_Hon. Shira A. Scheindlin, Chair_

I, Theodore Folkman do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

9/18/23
_____          _____
Date                                                Theodore Folkman

I, Hon. Howard A. Tescher, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Final Award.

_____          _____
Date                                                Hon. Howard A. Tescher

01-22-0003-2317                                                          24



_____
Theodore Folkman, Co-arbitrator

_____
Hon. Howard A. Tescher, Co-arbitrator

_____
Hon. Shira A. Scheindlin, Chair


I, Theodore Folkman do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_____

Date                                        Theodore Folkman




I, Hon. Howard A. Tescher, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Final Award.

_____

Date                                        Hon. Howard A. Tescher

01-22-0003-2317                                                              24

_____

Theodore Folkman, Co-arbitrator


_____

Hon. Howard A. Tescher, Co-arbitrator

_____

Hon. Shira A. Scheindlin, Chair


I, Theodore Folkman do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_____

Date                                             Theodore Folkman



I, Hon. Howard A. Tescher, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Final Award.

_____

Date                                             Hon. Howard A. Tescher

01-22-0003-2317                                                    24

I, Hon. Shira A. Scheindlin, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

9/19/23
Date

Hon. Shira A. Scheindlin
Chair

01-22-0003-2317                                                                                    25